IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ROBERT ALLEN,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **CIVIL ACTION 03-0375-WS-L** |
| ) | |
| **WARDEN GRANT CULLIVER,** *et al.*, ) | |
| ) | |
| Respondent. ) | |

**ORDER**

This closed action comes before the Court on petitioner's pleading styled "Motion to Vacate Set Aside Court Order Denial of Petitioner's Habeas Petition Pursuant to Rule 60(B)(1) and 6 of the Fed.R.Civ.P." (doc. 16).

**I.      Procedural Background.**

The court file reflects that on June 17, 2003, petitioner Robert Allen submitted a Petition for Writ of Habeas Corpus by a Person in State Custody (doc. 1) pursuant to 28 U.S.C. § 2254.  The Petition alleged eight grounds for relief, including six claims that trial counsel had provided ineffective assistance, one claim that appellate counsel had furnished ineffective assistance, and a claim of prosecutorial misconduct.  On March 4, 2004, Magistrate Judge Lee entered a Report and Recommendation (doc. 11) concluding that Allen's rights had not been violated and recommending denial of the Petition.  After due consideration of Allen's objections, the undersigned entered an Order (doc. 14) dated March 17, 2004 adopting the Report and Recommendation and denying Allen's petition.  A separate Judgment (doc. 15) was entered contemporaneously.

Following entry of Judgment, the court file reflects no further activity in this case until May 4, 2005, when Allen filed the instant Motion to Vacate.  In his Motion, Allen maintains that after receiving the Judgment, he promptly prepared a Notice of Appeal and request for Certificate of Appealability, both of which he entrusted to a corrections officer named Nicholas Gregson on March 28, 2004 for

mailing to the Clerk's Office.[1]  According to Allen, he had no other means of mailing his appeals paperwork because he was held in Holman's segregation unit from December 21, 2002 through July 3, 2004.  Allen insinuates that Gregson failed to mail those materials because of personal animus engendered by Allen's then-pending civil suit against him.[2]  Whatever the explanation, Allen's Notice of Appeal was never received by the Clerk's Office, and therefore was never filed.  Allen indicates that he did not learn that his appeal had never been initiated until March 2005, when he first inquired of the Clerk's Office as to the status of his appeal.[3]  In addition to alleging these facts in his Motion, Allen has also submitted his sworn affidavit dated April 4, 2005 to substantiate his contentions; however, he has not presented copies of the Notice of Appeal and Motion for Certificate of Appealability he claims to have given to Gregson for mailing to the Clerk's Office in March 2004.

**II.    Analysis.**

   *A.    Allen is Not Entitled to Relief under Fed.R.Civ.P. 60(b).*

The fundamental defect in Allen's Motion to Vacate, taken on its face, is that he seeks relief

---

[1] Allen has been incarcerated at Holman Correctional Facility at all times material hereto. Court records confirm that Allen had previously filed suit against Gregson and two other officers at Holman in an action captioned *Robert S. Allen v. William Ammons, et al.*, Civil Action 03-0136-BH-C.  In the *Ammons* litigation, Allen asserted that Gregson had violated his constitutional rights by failing to intervene when another officer, Ammons, slapped petitioner repeatedly during a disciplinary hearing relating to an incident in which Allen had allegedly assaulted another inmate and a correctional officer with a broom handle and a baton, respectively.

[2] This explanation for the non-filing of the Notice of Appeal is not altogether satisfying. After all, Allen routinely filed pleadings in this action and in 03-0136-BH-C during the 18-month span when he was housed in Holman's segregation unit.  Indeed, Allen's § 2254 petition, as well as his traverse and objections to the Report and Recommendation, were all filed during the interval between December 2002 and July 2004.  Because Allen's segregation unit status did not prevent him from filing pleadings in this District Court on a regular basis, it is unclear why this one mailing would not have been made when so many others were.

[3] Given that Allen had been transferred from Holman's segregation unit on July 3, 2004, there is no apparent reason why he could not have followed up with the Clerk's Office as to the status of his appeal by no later than July 2004, in which case he would have learned of the non-filing of his appeal papers eight months sooner than he actually did.

that this Court cannot provide, for three distinct reasons. First, although styled as a request for relief from a judgment or order pursuant to Rule 60(b), Fed.R.Civ.P., petitioner does not offer any viable legal basis for vacating the Order and Judgment. Rule 60(b) authorizes relief from judgment only in certain narrowly circumscribed situations. He does not allege that the Order and Judgment are incorrect or invalid; rather, he complains that he was deprived of an opportunity to appeal from those adverse determinations. Rule 60(b) does not confer a right to relief on that basis.[4] Second, Rule 60(b) provides that motions for relief from judgment predicated on excusable neglect or newly discovered evidence (the two circumstances invoked by Allen) "shall be made within a reasonable time," but no later than one year after entry of judgment. Yet Allen did not file his putative Rule 60(b) Motion until nearly 14 months after Judgment was entered.[5] To the extent that petitioner seeks relief pursuant to Rule 60(b), then, his request is untimely. Third, and most importantly, the Eleventh Circuit has greatly restricted the use of Rule 60(b) in the habeas context, explaining that "Rule 60(b) relief should not be granted from a judgment denying habeas relief unless a demanding standard is met," and that any Rule 60(b) motion by a habeas petitioner "is the functional equivalent of a second or successive petition," triggering the AEDPA requirements of 28 U.S.C. § 2244(b). *Gonzalez v. Secretary for Dept. of*

---

[4] Because Allen has not pleaded facts or circumstances that might warrant vacating the Judgment, it appears that he is utilizing Rule 60(b) as a means of trying to reset and restart the appeal clock under Rule 4(a)(5), Fed.R.App.P. Any such gambit must fail because it would place Rule 60(b) and Rule 4(a)(5) on a collision course. *See Dunn v. Cockrell*, 302 F.3d 491, 493 (5th Cir. 2002) (where time for appealing adverse habeas ruling under Rule 4(a)(5) had expired, petitioner could not utilize Rule 60(b) motion as a means of bypassing the appeal deadline and achieving an extension of time for filing notice of appeal). As the Fifth Circuit explained, "Rule 60(b) cannot be used to circumvent the limited relief available under Federal Rule of Appellate Procedure 4(a)(5), which advances the principle of protecting the finality of judgments." *Id.* at 492-93.

[5] Although the caption of petitioner's Motion suggests that he is invoking Rule 6, Fed.R.Civ.P., to overcome the one-year limit under Rule 60(b), his reliance on Rule 6 is misplaced. Rule 6(b) generally authorizes district courts to enlarge the time for performing any act required under the Federal Rules of Civil Procedure under circumstances of good cause or excusable neglect. However, that rule expressly provides that a district court "may not extend the time for taking any action under Rule[] ... 60(b), except to the extent and under the conditions stated" therein. Rule 6(b), Fed.R.Civ.P. Nothing in the text of Rule 60(b) might permit expansion of Rule 60(b)'s one-year filing deadline here.

*Corrections*, 366 F.3d 1253, 1275 (11th Cir. 2004). "[B]ecause a petitioner's attempt to reopen a final habeas judgment pursuant to Rule 60(b) is to be treated as an application to file a second or successive petition, it ordinarily should be dismissed by the district court pursuant to § 2244(b)(4)." *Boone v. Secretary, Dept. Of Corrections*, 377 F.3d 1315, 1317 (11th Cir. 2004) (citation omitted). That principle forecloses any possibility of granting petitioner relief under Rule 60(b).

For all of these reasons, Allen can receive no benefit from Rule 60(b).

### B.      *Allen is Not Entitled to an Extension of Time to File a Notice of Appeal.*

Notwithstanding that he has styled his pleading as a Rule 60(b) Motion, it appears that Allen seeks leave to file his Notice of Appeal out of time.[6] Assuming that it is proper to construe the purported Rule 60(b) motion as a motion for extension of time to appeal, the Court remains of the opinion that the Motion would fail. Because habeas cases are civil in nature, they are subject to Rule 4(a)(1), Fed.R.App.P., which provides that notices of appeal must be filed within 30 days after entry of the judgment or order appealed from. *See generally Houston v. Lack*, 487 U.S. 266, 269, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (applying Rule 4(a)(1)'s 30-day filing period to computation of appeal deadlines in § 2254 action); *Jackson v. Crosby*, 375 F.3d 1291, 1295 (11th Cir. 2004) (similar); *Wilkens v. Johnson*, 238 F.3d 328, 330 (5th Cir. 2001) ("Notwithstanding the reason for a petitioner's being in custody ... a petition for a writ of habeas corpus filed in federal court is a civil proceeding."). The timely filing of a notice of appeal is both "mandatory and jurisdictional." *Pinion v. Dow Chemical, U.S.A.*, 928 F.2d 1522, 1525 (11th Cir. 1991) (citations omitted).[7] According to the Eleventh Circuit,

---

[6]      In construing the Motion in this manner, the Court recognizes its "obligation to look behind the label of a motion filed by a *pro se* inmate and determine whether the motion is, in effect, cognizable under a different remedial ... framework." *Sanders v. United States*, 113 F.3d 184, 187 n.5 (11th Cir. 1997) (citation omitted).

[7]      *See also Cavaliere v. Allstate Ins. Co.*, 996 F.2d 1111, 1114 (11th Cir. 1993) (observing that filing an appeal within 30-day limit is mandatory precondition to exercise of appellate jurisdiction); *United States v. Henry*, 2002 WL 228060, *2 (10th Cir. Feb. 15, 2002) ("The requirement to file a timely notice of appeal is both mandatory and jurisdictional and is a requirement this court is without power to waive."); *Corado v. Reno*, 2001 WL 589448, *1 (4th Cir. June 1, 2001) ("failure to note a timely appeal or timely request an extension of the appeal period leaves this court without jurisdiction to consider the merits of his appeal").

this requirement "means what it says: if an appellant does not file his notice of appeal on time, we cannot hear his appeal." *Id.* at 1525 (citations omitted). An untimely post-trial motion does not toll the period for filing a notice of appeal. *Id.*

Pursuant to Rule 4(a)(5), district courts have limited authority to extend the time to file a notice of appeal on grounds of "excusable neglect or good cause," provided that a motion for such extension must be filed "no later than 30 days after the time prescribed by this Rule 4(a) expires." Rule 4(a)(5)(A)(i)-(ii).[8] If a motion to extend the time for filing a notice of appeal is not filed until more than 30 days after the 30-day Rule 4(a)(1) deadline, the district court cannot grant an extension, irrespective of any good cause or excusable neglect. *See Cavaliere*, 996 F.2d at 1114 (appellant who failed to meet 30-day deadline for timely notice of appeal, and to meet second 30-day deadline for filing a motion for extension of time, was not entitled to initiate the "excusable neglect or good cause" inquiry of Rule 4(a)(5) and district court "had no choice but to deny his motion"); *Martinez v. Hoke*, 38 F.3d 655, 657 (2$^d$ Cir. 1994) (finding that district court lacked jurisdiction to extend habeas petitioner's time to appeal, where motion requesting extension was filed more than 30 days after appeal deadline).

The foregoing legal principles render it abundantly clear that this Court lacks jurisdiction to grant Allen an extension of time for filing his Notice of Appeal at this juncture. Under well-established law, a district court may grant a motion for extension of time to file a notice of appeal only if the motion is filed not later than 60 days after entry of the judgment from which appeal is being taken. Allen did not file the instant Motion until nearly 14 months after entry of Judgment. As such, even if Allen's Motion is properly construed as a motion to extend time pursuant to Rule 4(a)(5), Fed.R.App.P., this Court is not empowered to grant him an extension under the circumstances presented here.[9]

---

[8] Requests for extension of time to file a notice of appeal must be presented to the district court, not the appellate court. *See Hulsey v. Sargent*, 15 F.3d 115, 119 (8th Cir. 1994) ("Unlike the district court, courts of appeals are prohibited from enlarging the time limits for filing a notice of appeal.").

[9] To take the analysis one step further, Allen's Motion would fare no better under Rule 4(a)(6) review. Rule 4(a)(6) authorizes a district court to reopen the time to file an appeal, but only if all of the following conditions are satisfied: (i) the would-be appellant files a motion to reopen within 180 days after entry of judgment or within 7 days after notice of entry of judgment, whichever is earlier;

### C. *The Prisoner Mailbox Rule.*

Notwithstanding the foregoing, the Court recognizes that there remains one possible avenue under which petitioner's notice of appeal might be deemed timely. In *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) the Supreme Court articulated the parameters of and the rationale for what has come to be known as the "prisoner mailbox" rule. The *Houston* Court held that a *pro se* prisoner's notice of appeal is deemed filed on the date that the prisoner "deliver[s] it to the prison authorities for forwarding to the court clerk," rather than when it is received by the court clerk. 487 U.S. at 276; *see also Sanders v. United States*, 113 F.3d 184, 187 (11th Cir. 1997) (pointing out that "a prisoner's notice of appeal is deemed filed when delivered to prison authorities"); *Porchia v. Norris*, 251 F.3d 1196, 1198 (8th Cir. 2001) ("In essence, a notice of appeal is filed within the meaning of Rule 4 at the moment it is delivered to prison officials for forwarding to the clerk of the district court.") (citation omitted); *Sudduth v. Arizona Atty. Gen.*, 921 F.2d 206, 207 (9th Cir. 1990) ("Because appellant is a pro se prisoner ... his notice of appeal is deemed filed when it was delivered to prison authorities for forwarding to the court.").[10] The rule articulated in *Houston* is consistent with the present formulation of the Federal Rules of Appellate Procedure, which were revised in 1993 to

---

(ii) the movant did not receive notice of judgment within 21 days after entry; and (iii) no party would be prejudiced. *Id.* These requirements are stringently enforced. *See McDaniel v. Moore*, 292 F.3d 1304, 1307 (11th Cir. 2002) (district court properly denied motion to reopen under Rule 4(a)(6) where petitioner failed to submit motion within 7 days after receiving notice of judgment); *Clark v. Lavallie*, 204 F.3d 1038, 1040 (10th Cir. 2000) ("[N]othing within Rule 4(a)(6) indicates it is permissive or that its limitations may be waived for equitable reasons."). The record before the Court unequivocally shows that neither the first nor the second prerequisites of Rule 4(a)(6) are satisfied here; therefore, Allen cannot obtain relief on that theory.

[10] The reasoning for this rule is twofold. First, *pro se* prisoners cannot take the precautions available to other litigants to ensure that their documents are timely filed. *See Houston*, 487 U.S. at 271 ("Other litigants may choose to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers, but only the pro se prisoner is forced to do so by his situation."). Second, the pro se prisoner must "entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay." *Id.* In light of Allen's allegation that he was forced to entrust his Notice of Appeal to a correctional officer whom he had sued, these policy considerations potentially loom large.

provide that "[i]f an inmate confined in an institution files a notice of appeal in either a civil or a criminal case, the notice is timely if it is deposited in the institution's internal mail system on or before the last day for filing."  Rule 4(c)(1), Fed.R.App.P.

Under *Houston* and Rule 4(c), then, "[t]o be timely, a pro se prisoner's notice of appeal in a civil case must either be filed in the district court, or alternatively, placed in the institutional mail system or legal mail system, not later than 30 days after the judgment appealed from is entered on the docket." *Leal v. Georgia Dept. of Corrections*, 254 F.3d 1276, 1277 (11th Cir. 2001).  Where the mailbox rule applies, the notice of appeal is deemed filed the moment it is handed to prison authorities for mailing, regardless of when it is received by the clerk's office.

However, the prisoner mailbox rule is construed strictly.  An inmate does not receive the benefit of the rule if he has failed to meet his responsibility of doing all he reasonably can to ensure documents are received for filing in a timely manner.  For example, a prisoner cannot invoke *Houston* if his notice of appeal is filed late because of his failure to affix proper postage, to properly address outgoing mail, or to follow reasonable prison regulations governing outgoing legal mail.  *See Dison v. Whitley*, 20 F.3d 185, 186-87 (5th Cir. 1994).  Nor does that rule apply if a *pro se* prisoner delivers his notice of appeal to someone outside the prison system for forwarding to the court.  *See Knickerbocker v. Artuz*, 271 F.3d 35, 37 (2d Cir. 2001).

Because the *Houston* rule applies to a narrow range of cases, a *pro se* prisoner cannot avail himself of it unless he makes a threshold showing by a declaration or notarized statement, "each of which must set forth the date of deposit and state that first-class postage has been prepaid."  Rule 4(c)(1), Fed.R.App.P.; *see also* Rule 25(a)(2)(C), Fed.R.App.P. (same); *Porchia*, 251 F.3d at 1198 ("Assuming that he used a prison mailing system, Porchia was required to file an affidavit or notarized statement recounting the precise date upon which he left his notice of appeal with prison authorities."); *Lee v. County of Cook*, 2001 WL 252928, *1 (7th Cir. Mar. 12, 2001) ("In order to receive the benefit of the mailbox rule, prisoners must demonstrate that they timely presented their submissions to prison authorities for mailing.").

Where a factual dispute arises over whether and, if so, when an inmate delivered a notice of

appeal to prison authorities for mailing to the court clerk, it is the district court's responsibility to resolve that issue. *See Sanders*, 113 F.3d at 186 n.2 (opining that determination of date petitioner delivered notice of appeal to prison authorities "is a factual question for the district court to resolve on remand"); *Oliver v. Commissioner of Massachusetts Dep't of Corrections*, 30 F.3d 270, 272 (1st Cir. 1994) (explaining that whether an inmate has shown that he submitted a notice of appeals to prison authorities in advance of a filing deadline "is a factual finding for the district court"); *Sudduth*, 921 F.2d at 207 (where the mailbox rule is at issue, "[o]rdinarily, we will remand to the district court for the limited purpose of enabling that court to determine when the prisoner delivered the notice of appeal to prison authorities").

### D. *Application of the Prisoner Mailbox Rule to Allen.*

Presently, the record reveals three critical facts that may have a bearing on application of the mailbox rule to Allen's circumstances. First, a reasonable reading of Allen's affidavit is that he claims to have delivered his Notice of Appeal to correctional officer Nicholas Gregson, "the only source Robert S. Allen had to deliver his legal mail" because of his segregation unit status, on March 28, 2004. Because the undersigned entered Judgment on March 17, 2004, the mailbox rule would give Allen through April 16, 2004 (or 30 days after entry of Judgment) to deliver his Notice of Appeal to prison authorities. If the mailbox rule applies and if Allen in fact delivered the Notice of Appeal to prison authorities for mailing on March 28, 2004, then his appeal would be deemed filed as of that date, such that it would be timely.[11]

Second, the Notice of Appeal was never received, and to this day has never been received, by the Clerk's Office. This fact may or may not have repercussions for the mailbox rule. At least one appellate court has found the latter, holding that the *Houston* rule applies even if a pleading is never received by the district court. *Huizar v. Carey*, 273 F.3d 1220, 1223 (9th Cir. 2001) ("We hold that *Houston*'s rationale applies with equal force in such a case.").

---

[11] It is not clear that Allen's showing that he furnished the notice of appeal to prison authorities in a timely manner is legally sufficient. *See Oliver*, 30 F.3d at 272 (affirming district court determination of no timely notice of appeal where petitioner never produced a copy of the purported notice of appeal, instead offering only an unsupported affidavit).

Third, Allen's affidavit confirms that he did not make any inquiry about the status of his appeal until writing to the Clerk's Office on March 14, 2005, nearly 12 months after he purportedly delivered the Notice of Appeal to prison authorities. There is at least some authority for the proposition that a prisoner may forfeit his right to invoke the mailbox rule by failing to exercise reasonable diligence in ascertaining the status of his appeal after delivering a mailing to prison authorities. *See Huizar*, 273 F.3d at 1223 ("A prisoner who delivers a document to prison authorities gets the benefit of the prison mailbox rule, *so long as he diligently follows up once he has failed to receive a disposition from the court after a reasonable period of time.*") (emphasis added); *see generally Drew v. Department of Corrections*, 297 F.3d 1278, (11th Cir. 2002) (in different context, finding that habeas petitioner had not diligently attempted to confirm status of order where he waited 16 months before inquiring to clerk's office).

### III. Conclusion.

The foregoing observations raise important factual and legal questions related to application of the mailbox rule here. The Court cannot definitively resolve those questions without further briefing. Accordingly, Respondent is **ordered**, on or before **June 16, 2005**, to submit a responsive brief, supported by exhibits and legal authority as appropriate and addressing the applicability of the prisoner mailbox rule to this case. Respondent's brief should, at a minimum, address the following points: (i) whether Allen performed all prerequisites for application of the prisoner mailbox rule in March 2004 (*i.e.*, whether he presented the Notice of Appeal to Gregson, whether the envelope was properly addressed and included proper postage, whether he complied with any applicable prison regulations relating to outgoing legal mail for segregation unit inmates, etc.); (ii) whether the Clerk's Office's nonreceipt of the Notice of Appeal impacts how the mailbox rule is applied; (iii) whether the *Houston* rule has a "reasonable diligence" component as identified in *Huizar* and, if so, whether Allen satisfied that requirement; (iv) whether any other considerations counsel for or against awarding Allen the benefit of the mailbox rule; and (v) whether a hearing is necessary to resolve these issues. Allen will be permitted to file a reply brief on or before **July 7, 2005**, at which time his Motion to Vacate (doc. 16) will be taken under submission.

DONE and ORDERED this 16th day of May, 2005.

s/ WILLIAM H. STEELE  
UNITED STATES DISTRICT JUDGE
