IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ROBERT S. ALLEN, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
| v. | )    CIVIL ACTION 03-0375-WS-M |
| | ) |
| GRANTT CULLIVER, | ) |
| | ) |
|     Respondent. | ) |

**ORDER**

This petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is before the Court on remand from the Eleventh Circuit Court of Appeals on the question of whether petitioner Robert S. Allen timely appealed from this Court's denial of his § 2254 petition. For the reasons set forth below, the undersigned concludes that petitioner's Notice of Appeal is properly construed as timely, but that the request for certificate of appealability implicit in that Notice of Appeal is due to be denied.

**I.    Procedural History.**

After being convicted of first-degree robbery and attempted murder in Alabama state court in 1997, petitioner Robert S. Allen was sentenced to two consecutive life terms of imprisonment. The Alabama courts denied Allen relief on both direct appeal and Rule 32 proceedings, prompting him to file a § 2254 petition in this District Court seeking a writ of habeas corpus. Allen's federal habeas petition alleged six claims of ineffective assistance of trial counsel, one claim of ineffective assistance of appellate counsel, and a *Brady* violation. On March 17, 2004, the undersigned entered an Order (doc. 14) adopting the Magistrate Judge's Report and Recommendation, and denying Allen's § 2254 petition.

The Clerk's Office did not receive a timely notice of appeal from petitioner. On May 4, 2005, however, petitioner filed his Motion to Vacate (doc. 16), contending that he should be permitted to proceed with his appeal at that time because back on March 28, 2004 he had provided a properly addressed envelope containing his Notice of Appeal to prison officials at Holman Correctional Facility ("Holman"), where he is incarcerated. The undersigned concluded

that petitioner could not proceed with his appeal at that time because his lack of diligence in the intervening 13 months stripped him of the right to invoke the prison mailbox rule.[1]  On appeal, the Eleventh Circuit reversed, based on its determination that "[o]nce there has been a finding of fact that a timely notice of appeal was in fact delivered to the proper prison authorities (proper postage prepaid) for mailing to the district court, there is no room, either in *Houston* or in Fed.R.App.P. 4(c), for the operation of a diligence requirement."  *Allen v. Culliver*, 471 F.3d 1196, 1198 (11th Cir. 2006).  In remanding the action, the Eleventh Circuit instructed this Court to make a finding of fact as to whether or not, and when, Allen had delivered the Notice of Appeal to prison authorities, "tak[ing] into account any and all relevant circumstances, including any lack of diligence on the part of Allen in following up in a manner that would be expected of a reasonable person in his circumstances."  471 F.3d at 1198.  Further, the Eleventh Circuit instructed that the burden of proof rests on the State if Allen satisfies Rule 4(c)(1), Fed.R.App.P., by submitting a declaration or notarized statement setting forth the date of deposit and stating that first-class postage was prepaid.  *Id.* at 1198-99.

On remand, the undersigned has afforded both parties a full and fair opportunity to submit evidence and argument on the question of applying the mailbox rule to Allen's circumstances.

## II.     Application of the Prison Mailbox Rule.

The logical starting point of the analysis is Rule 4(c)(1) of the Federal Rules of Appellate Procedure, which provides that if an inmate files a notice of appeal, "the notice is timely if it is deposited in the institution's internal mail system on or before the last day for filing. ... Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid."  *Id.*  In a pair of notarized affidavits filed after remand, Allen has made the

---

[1]     The prison mailbox rule generally provides that a *pro se* prisoner's notice of appeal is deemed filed when the prisoner "deliver[s] it to the prison authorities for forwarding to the court clerk," irrespective of whether or when it is received by the court clerk.  *Houston v. Lack*, 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); *see also Sanders v. United States*, 113 F.3d 184, 187 (11th Cir. 1997) (pointing out that "a prisoner's notice of appeal is deemed filed when delivered to prison authorities").

requisite Rule 4(c)(1) showing.  In particular, his Affidavit (doc. 41) dated January 17, 2007 and signed under penalty of perjury includes statements that Allen "filed a notice of appeal ... by placing a proper addressed envelope with proper postage for delivery to the court in the hands of prison authorities 'officer Gregson', which is the proper institutional mailing procedures at W.C. Holman segregation unit to send out legal mail."  (January 17 Affidavit, at 1-2.)[2]  In a Supplemental Affidavit (doc. 44) dated February 4, 2007 and signed under penalty of perjury, Allen averred that March 28, 2004 was the date on which he placed his properly addressed, postage-prepaid Notice of Appeal in the hands of Officer Gregson for deposit into the institutional mailbox.  Clearly, this showing suffices to satisfy the Rule 4(c)(1) requirements; therefore, the burden of proof rests with the State to prove that Allen did not timely provide the Notice of Appeal to prison officials for mailing.  *See Allen*, 471 F.3d at 1198-99 & n.2.

The State candidly acknowledges that, despite "considerable inquiry," it has been able to find "no direct proof either dispelling or confirming Allen's contention ...."  (Response (doc. 46), ¶ 2.)  Nonetheless, the State proffers a series of exhibits and arguments in an effort to meet its burden.  First, the State points to Alabama DOC Administrative Regulation 448, which provides that prison staff will maintain a bound ledger for logging incoming legal mail, with no parallel recordkeeping system for outgoing legal mail.  (*See* doc. 46, Exh. 1 at 4.)[3]  At most, then, this document merely establishes that Alabama DOC had no policy or practice of maintaining records of outgoing inmate legal mail, a fact which in no way undermines the veracity of Allen's affidavits.

Second, the State offers the Affidavit of Grantt Culliver, the warden of Holman.  This affidavit is unsigned, undated, and does not even bear the electronic signature authorized by § II.C.2. of this District Court's Administrative Procedure for Filing, Signing, and Verifying

---

[2] Indeed, Allen avers in his January 17 Affidavit that, in light of his segregated status, petitioner's only means of sending out legal mail was to place it in a corrections officer's possession and trust said officer to place it in Holman's mail carry-out box.

[3] The copy of Administrative Regulation 448 proffered by the State is dated December 19, 2005; however, the events of concern in this matter transpired in March 2004.  The State presents no evidence that Administrative Regulation 448, or something akin to it, was in force in March 2004.

Documents by Electronic Means; therefore, it is of no evidentiary value.[4]  Even if the Culliver Affidavit had been executed, however, it is largely unhelpful.  Indeed, that affidavit merely confirms Holman's procedures for collecting and sending outgoing mail for inmates in segregation, and indicates that inmates are permitted two first-class postage stamps each week for purposes of legal mail.  According to the Culliver Affidavit, the prison mail clerk maintains a weekly log of each inmate who is given postage stamps for legal mail, but in general "[n]o other records are maintained in reference to mail going out of the facility."  (Doc. 46, Exh. 2 at 1-2.)  Culliver also avers that he is unaware of any complaints by Allen concerning tampering or non-delivery of his outgoing legal mail by correctional officers.

Third, the State offers a copy of the log of free postage stamp issuance for the weeks of March 15-22, 2004 and March 23-30, 2004.  This exhibit actually bolsters Allen's account, as it confirms that he requested and received two free first-class stamps for legal mail in each of those weeks, which encompass the March 28 date on which Allen claims to have entrusted his Notice of Appeal to prison authorities for mailing to the Clerk's Office.[5]

Fourth, the State would cast doubt on Allen's assertion that Officer Gregson (the corrections officer to whom Allen maintains he handed his Notice of Appeal for mailing) had a motive to sabotage his mailings because Officer Gregson was a defendant in a § 1983 action brought by Allen following an altercation between Allen and another officer.  (*See* doc. 16, at 3.)  To refute the notion that Officer Gregson might have harbored ill will towards Allen, the State argues that the § 1983 complaint "was filed on April 1, 2003 - *after* the date Officer Gregson

---

[4]  To be sure, the State's Response (doc. 46) filed on February 13, 2007 included a footnote explaining that "[a] hard copy of this affidavit has been sent by the Warden and will be forwarded immediately to the Court upon receipt."  (Response, at 7 n.4.)  Four weeks later, however, no such document has been filed; therefore, the Court can only assume that no signed original exists.

[5]  On this point, rather than attempting to satisfy its burden of proof, the State appears to be attempting to create some scintilla of doubt in Allen's account by arguing that the stamp log "does not indicate what the stamps were used for" and that those stamps "could have been used for other legal mail."  (Doc. 46, at 3.)  The State having opted not to keep records of the specific uses of legal stamps issued to inmates, it can neither fault inmates for, nor derive any strategic advantage from, that conspicuous omission from its records.

allegedly failed to mail the notice of appeal." (Doc. 46, at 4.)  Once again, the State's evidence backfires.  It is true that Allen's § 1983 action against Officer Gregson and others commenced on April 1, 2003; however, this was nearly a year <u>before</u> the March 28, 2004 mailing that is at issue here.  Thus, the State's position is predicated on a transposition of the sequence of events and in no way casts doubt on Allen's account.[6]

 Fifth, the State recites a number of reasons why it does not believe Allen, including the following: (i) Allen never complained to prison officials that his legal mail was being intercepted, and (ii) Allen's frequent legal mail submissions routinely reached this District Court during the time frame of concern, with the only exception being the March 28 mailing.  Allen's failure to complain is readily understandable; specifically, all appearances are that this was his only legal mailing that was not timely received by the Clerk's Office, and that he did not learn of the non-receipt of this March 28 mailing for almost a year after the fact, by which time he was no longer in Holman's segregation unit and no longer subject to the segregation mailing practices to which he attributes the transmission breakdown.  In light of these facts, it would have been entirely reasonable for Allen not to complain to the warden when he finally became aware of the problem.  And the mere fact that no other of Allen's legal mailings were misplaced or diverted is wholly inadequate to satisfy the State's burden of proving that Allen failed to give <u>this</u> mailing to prison authorities.

 Sixth and finally, the State urges the Court to conclude that Allen's lack of diligence in inquiring about the status of his appeal has prejudiced the State and should foreclose consideration of the Notice of Appeal at this time. (Doc. 46, at 5-6.)  This argument bears striking similarity to the undersigned's original Order in this case, imposing a diligence requirement on Allen.  That Order was reversed on appeal.  As the Court understands the Eleventh Circuit's mandate, Allen's lack of diligence and any resulting prejudice to the State are irrelevant for purposes of applying the prison mailbox rule, except insofar as the lack of

---

[6]  Indeed, the State's evidence confirms that Allen's § 1983 lawsuit against Officer Gregson was still pending as of the March 28, 2004 date on which Allen maintains he entrusted his Notice of Appeal to Officer Gregson for mailing.  In that regard, Exhibit 5 to the State's filing reflects that the § 1983 action was dismissed on May 5, 2004, some six weeks after the filing event at issue here.  Thus, the timing is perfectly consistent with Allen's theory.

diligence might bolster an inference that Allen never delivered the underlying mailing to prison authorities in the first place. That inference, while it exists here, is far too slender a reed to bear the full weight of the State's burden of proof.

The Eleventh Circuit has made it clear that, Allen having satisfied Rule 4(c)(1), it is incumbent on the State to prove that he never delivered the Notice of Appeal to prison authorities for mailing. Despite a searching investigation of Holman records, the State has no such evidence, and therefore asks the Court to strike down the Notice of Appeal based on innuendo and speculation. That's not enough to fulfill the State's burden. Ultimately, the State is in a dilemma of its own creation. In announcing the prison mailbox rule nearly 20 years ago, the Supreme Court commented that "prison authorities ... have well-developed procedures for recording the date and time at which they receive papers for mailing and ... can readily dispute a prisoner's assertions that he delivered the paper on a different date. ... [R]eference to prison mail logs will generally be a straightforward inquiry." *Houston*, 477 U.S. at 275. Notwithstanding this decades-old guidance, Holman's mail logs and mail handling procedures remain inadequate to enable the State to dispute prisoners' assertions as to when they delivered mail to prison authorities for mailing, so as to trigger the prison mailbox rule. Having elected not to implement the procedural safeguards contemplated by *Houston*, the State has left itself vulnerable to arguments such as that posited by Allen. Thus, the State is profoundly ill-equipped to dispute Allen's assertion as to when and to whom he submitted his Notice of Appeal for mailing.[7]

For all of these reasons, the Court concludes that Allen has satisfied the provisions of Rule 4(c)(1) and that the State has failed to prove that Allen did not deliver his Notice of Appeal to prison authorities for mailing, properly addressed and first-class postage prepaid, on March 28, 2004. Accordingly, Allen is entitled to the benefit of the *Houston* rule and his Notice of Appeal is deemed timely filed. The Clerk's Office is hereby directed to docket as a separate pleading the copy of the Notice of Appeal appended as Exhibit A to Allen's Reply Brief (doc. 20) filed on July 5, 2005.

---

[7] Tellingly, the State has not even requested an evidentiary hearing on the application of the prison mailbox rule in this particular case. Under the facts presented here, such a hearing would serve no constructive purpose, as the State has come forward with no sound basis in fact why Allen's account should not be believed.

### III.     Request for Certificate of Appealability.

#### A.     Legal Standard.

Having determined that Allen's Notice of Appeal in this § 2254 proceeding was timely filed, the Court next considers whether Allen is entitled to a Certificate of Appealability ("COA") in connection with that appeal.  The appeal is governed by 28 U.S.C. § 2253(c)(1)(B), which provides in pertinent part that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from ... the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court."  *Id.*  Thus, a COA is ordinarily a jurisdictional prerequisite to an appeal in a habeas corpus proceeding for relief from detention originating in state court process.  *See, e.g., Medberry v. Crosby*, 351 F.3d 1049, 1063 (11th Cir. 2003).  "The certificate of appealability is a threshold or gateway requirement which serves to filter out from the appellate process cases in which the possibility of reversal is too unlikely to justify the cost to the system of a full appellate examination."  *Gonzalez v. Secretary for Dept. of Corrections*, 366 F.3d 1253, 1264 (11th Cir. 2004).  A COA is required for an appeal by a state court prisoner in any action brought under either 28 U.S.C. § 2241 or § 2254, inasmuch as the detention complained of arises out of process issued by a state court regardless of which statute is invoked.  *See Medberry*, 351 F.3d at 1063 & n.9; *see also Sawyer v. Holder*, 326 F.3d 1363, 1364 n. 3 (11th Cir. 2003) ("Based on the statutory language of 28 U.S.C. § 2253(c)(1), state prisoners proceeding under § 2241 must obtain a COA to appeal.").

Although petitioner did not file a separate request for COA, the Eleventh Circuit has explained that "[d]istrict courts must treat notices of appeal filed by petitioners following a denial of either a section 2254 or a section 2255 petition as applications for COAs."  *Edwards v. United States*, 114 F.3d 1083, 1084 (11th Cir. 1997); *see also United States v. Youngblood*, 116 F.3d 1113, 114-15 (5th Cir. 1997).  For that reason, the Court will construe Allen's Notice of Appeal as including an implicit request for issuance of a COA.

It is well established that a COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *Hardwick v. Singletary*, 126 F.3d 1312, 1313 (11th Cir. 1997).  This standard is "materially identical" to that governing certificates of probable cause under the former 28 U.S.C. § 2253.  *Hardwick,* 126 F.3d

at 1313.  In the context of certificates of probable cause, the Supreme Court defined the requirement of "a substantial showing of the denial of a federal right" to mean that the applicant must raise an issue that is debatable among jurists of reason.  *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983).

> "In requiring a 'question of some substance,' or a 'substantial showing of the denial of [a] federal right,' obviously the petitioner need not show that he should prevail on the merits. . . . Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'"

*Id.* (citations omitted).  More recently, the Supreme Court echoed this interpretation in the context of a COA, opining that § 2253's "substantial showing" requirement means that a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (adopting and applying *Slack* standard).

Where a district court denies a habeas petition on procedural grounds distinct from the merits of the underlying claims, "a COA should issue only if the petitioner shows that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Lawrence v. Florida*, 421 F.3d 1221, 1225 (11th Cir. 2005) (citation omitted).  In that instance, both showings must be made before the appeal may be entertained.  *See id.*; *see also Gonzalez*, 366 F.3d at 1267 (where habeas petitioner appeals from procedural ruling, a COA may issue only if he makes a substantial showing that the procedural ruling was wrong and also makes a substantial showing of denial of a constitutional right).

### *B.     Analysis.*

As mentioned *supra*, Allen's § 2254 petition recited eight grounds for relief, including seven claims of ineffective assistance of trial and/or appellate counsel, and one claim of an

alleged *Brady* violation.[8]  The Court will consider each category of claims separately.

With respect to the seven ineffective assistance of counsel claims, the Report and Recommendation (doc. 11) adopted by this Court explained that the Alabama Court of Criminal Appeals had deemed identical claims in Allen's Rule 32 petition procedurally barred under state law because they lacked the specificity required by Rule 32.6(b), Ala.R.Crim.App.[9]  Of course, "a state court's rejection of a federal constitutional claim on procedural grounds will only preclude federal review if the state procedural ruling rests upon 'independent and adequate' state ground."  *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001).  As adopted by the undersigned, the Report and Recommendation concluded that the three-pronged "independent and adequate state ground" test set forth in *Card v. Dugger*, 911 F.2d 1494 (11th Cir. 1990), was satisfied here, and that Allen had failed to show cause and prejudice for the procedural default, such that Claims 1 through 7 were dismissed as procedurally barred.  (Report and Recommendation, at 5-10).  After careful review of the Report and Recommendation, petitioner's Objections (doc. 12), and all other portions of the file deemed relevant, the Court finds that reasonable jurists could not debate whether this procedural ruling was correct; therefore, Allen is not entitled to issuance of a COA on Claims 1 through 7 of his § 2254 petition.

Furthermore, notwithstanding its finding that Claims 1 through 7 were procedurally defaulted, the Report and Recommendation opined that each of these seven ineffective assistance claims would fail on the merits as well.  (Doc. 11, at 11-19.)  After careful consideration to the Magistrate Judge's claim-specific analysis (which was adopted by this Court) and petitioner's

---

[8]  In particular, the Petition asserted that Allen had received ineffective assistance of counsel in the following respects: (1) trial counsel failed to raise the issue of his unlawful arrest; (2) trial counsel failed to object to John Stimpson's in-court identification; (3) trial counsel failed to object to Emily Landers' in-court identification of co-defendant, Sherri Massey; (4) trial counsel failed to object to admission of a hearsay statement made by Massey; (5) trial counsel failed to object to the trial court's *ex parte* conference with prosecution witness Clifford Black; (6) trial counsel failed to investigate and call an exculpatory witness, Thomas Mayfield; and (7) appellate counsel failed to object to the Stimpson identification.

[9]  The Alabama appellate court declared that the Rule 32 trial court's attempt to analyze the merits of each ineffective assistance claim was "unnecessary" because "[n]one of these claims have been pleaded with any specificity to warrant further review," and specifically cited Rule 32.6(b) as the basis for this procedural determination.  (Doc. 9, Exh. J at 3.)

objections to same, the Court is convinced that reasonable jurists could debate neither whether the merits of Claims 1 through 7 should have been resolved in a different manner, nor whether the issues presented are adequate to deserve encouragement to proceed further.

Finally, with respect to the *Brady* claim delineated as Claim 8, the Report and Recommendation found that claim to be lacking on the merits. (Doc. 11, at 19-20.) In particular, the Report and Recommendation concluded - and the undersigned found - that the prosecution's failure to disclose the evidence in question (which related to an incident that occurred in the vicinity of the area where the offenses for which Allen was convicted took place, albeit two weeks earlier) did not undermine confidence in the verdict and that it was not reasonably probable that the result of the proceeding would have been different had that evidence been disclosed. *See Crawford v. Head*, 311 F.3d 1288, 1325 (11th Cir. 2002) (reciting *Brady* standard). After consideration of Allen's objections to the Report and Recommendation's disposition of the *Brady* claim, the undersigned finds that jurists of reason would not find it debatable whether Claim 8 states a valid claim for the denial of a constitutional right; therefore, issuance of a COA is not warranted on this claim either.

**IV. Conclusion.**

For all of the foregoing reasons, it is hereby **ordered** as follows:

1. By operation of the prison mailbox rule, Allen's Notice of Appeal dated March 28, 2004 will be deemed timely filed because he has made the showing required under Rule 4(c)(1), Fed.R.App.P., and the State has not carried its burden of demonstrating that Allen did not properly deliver the Notice of Appeal to prison authorities for mailing on that date;

2. The copy of the Notice of Appeal appended to document 20 as Exhibit A will be docketed as a separate pleading, and petitioner's appeal shall proceed as if that Notice had been received in a timely fashion; and

3. The Motion for Certificate of Appealability construed from Allen's Notice of Appeal is **denied**.

DONE and ORDERED this 12th day of March, 2007.

                                                s/ WILLIAM H. STEELE
                                                UNITED STATES DISTRICT JUDGE